IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINI
WHEELING DIVISION

*FILED*

MAR 3 2026

U.S. DISTRICT COURT- WVND
WHEELING, WV 26003

DIANA MEY,

      Plaintiff,

v.

PELICAN INVESTMENT
HOLDINGS, LLC, D/B/A AFFORDABLE
AUTO SHIELD, AASLLC, AAS, AFFORDABLE
AUTO PROTECTION, & AAP;

SUNPATH LTD.

and

SING FOR SERVICE, LLC
D/B/A MEPCO.

      Defendants.

Civil Action No.

5:26 cv 46

## COMPLAINT

Plaintiff Diana Mey ("Plaintiff") states as follows for her Complaint against Defendants Pelican Investment Holdings, LLC d/b/a Affordable Auto Shield, AASLLC, AAS, Affordable Auto Protection, and AAP; Sunpath Ltd; and Sing For Service, LLC d/b/a Mepco ("Defendants"):

### PRELIMINARY STATEMENT

1.    Plaintiff Diana Mey brings this lawsuit under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.

1

2.      The Plaintiff received at least eleven illegal telemarketing calls from Defendants to her wireless line between June 2022 and May 2023.

3.      The Plaintiff never consented to receive these calls, which were placed to her for telemarketing purposes.

## PARTIES AND JURISDICTION

4.  The Plaintiff, Diana Mey, is an individual residing in Wheeling, West Virginia.

5.  Defendant, Pelican Investment Holdings LLC ("Pelican") is a Delaware registered corporation headquartered in Santa Ana, California.  Pelican holds itself out to the public under various trade names, including "Affordable Auto Shield," "AAS," "AASLLC", "Affordable Auto Protection," and "AAP."  Its address for service of process is Corporate Creations Network Inc 1521 Concord Pike Suite 201, Wilmington DE 19803.  Defendant Pelican conducts telemarketing and sales operations nationwide, including in West Virginia and within this district, marketing and selling vehicle protection plans, colloquially referred to as "extended warranties."

6.  Defendant, Sunpath Ltd. ("Sunpath") is a Delaware corporation headquartered in Braintree, Massachusetts.  Its address for service of process is Registered Agent Solutions, Inc at Corporate Center One 5301 Southwest Parkway, Austin, TX  78735.  Defendant Sunpath administers and is the obligated party for vehicle protection plans, colloquially referred to as "extended warranties," marketed and sold nationwide by Pelican, including to consumers in West Virginia and within this district.

7.  Defendant Sing for Service, LLC is a Delaware limited liability company,

2

doing business as "Mepco." It is headquartered in Chicago, IL and its address for service of process is 10 S. LaSalle Street, Suite 2310, Chicago, IL 60603. Mepco provides financing and payment-plan services for vehicle protection plans sold by Pelican and administered by Sunpath Ltd. In that role, Mepco approves and funds consumer installment contracts, disburses funds to Pelican and Sunpath, and finances transactions involving consumers located in West Virginia and within this district.

**JURISDICTION & VENUE**

8. At all relevant times the Defendants conducted business in West Virginia, solicited business in West Virginia, engaged in a persistent course of conduct in West Virginia, and/or derived substantial revenue from products and services sold in West Virginia.

9. Because several of Plaintiff's claims arise under federal law, this Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

10. Because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, venue is proper under 28 U.S.C. § 1391(b)(2). In particular, the telemarketing calls and text messages to Plaintiff were received in this district.

**OPERATIVE FACTS**

11. Defendants are in the business of selling and operating various portions of, *inter alia,* vehicle protection plans, colloquially referred to as "extended warranties".

12. To reach as many customers as possible over the telephone, Defendants rely on the use of automated tools to place telemarketing phone calls and text messages that can reach thousands of potential customers en masse.

13. Many of these calls and text messages are also placed to consumers who registered their phone numbers on the federal Do Not Call registry, as per Plaintiff's experience.

14. Plaintiff's wireless telephone numbers (the "Numbers"), 304-242-XXXX and 304-280-XXXX are residential numbers she maintains for personal and household use.

15. The Plaintiff registered both Numbers on the National Do-Not-Call registry and both Numbers had been listed continuously on the National Do Not Call Registry for at least the 31 days prior to the calls.

16. The Plaintiff's phone number 304-242-XXXX is assigned to a voice-over-internet protocol (VOIP) service and Plaintiff is charged for each call placed to the 304-242-XXXX number.

17. Plaintiff has never provided any of the Defendants, nor their agents, with prior express consent to call or text the Numbers, nor does she have an established business relationship with any of the Defendants.

18. None of the Defendants' call were necessitated by an emergency purpose.

19. On June 21, 2022 Plaintiff received a call on her Number 304-XXX-

4

4327 from spoofed CID 304-512-1469. When Plaintiff answered, the call played a prerecorded message from the "national vehicle service center" that said the Plaintiff's vehicle service contract had ended and to "Press 1 to go over your options with one of our agents for information regarding reinstating your vehicle's coverage". Defendant's voice message was generic and robotic. The content, pattern, and tone of the speech made clear to Plaintiff that the message Defendant played was prerecorded in nature.

20. Because the name of the caller was not identified in the prerecorded message, Plaintiff pressed "1" to speak with a representative.

21. A representative, "Dave" then came on the line and said he was with "dealer services." Because of this agent's use of generic names, Plaintiff knew it would not be easy, or potentially impossible, to identify the caller without actually purchasing a service contract.

22. Plaintiff was transferred to multiple agents, provided her credit card number and email address to purchase a vehicle protection plan, solely for the purposes of identifying the caller.

23. While still on the phone with the caller, Plaintiff's credit card was debited in the amount of $195.00 by "AASLLC".

24. The following day, June 22, 2022, Plaintiff received an email that contained

link to download confirmation of the vehicle protection plan purchased on June 21, 2022.  When Plaintiff downloaded this document, it identified "AAP", a d/b/a of Defendant Pelican.

25. On June 29, 2022, Plaintiff received a booklet by USPS mail that outlined the terms of the vehicle protection plan purchased on June 21, 2022.  The plan identified Defendant Sunpath's "Sunpath Mileage Plus Deluxe" program, the finance company Defendant Mepco and the "seller/Dealer/Vendor Name" "AASLLC."

26. The booklet included a credit card authorization form that stated authorization was obtained "Per Phone" on June 21, 2022 – the same date Plaintiff received the generic illegal prerecorded call.

27. On July 8, 2022, Plaintiff received two separate emails from Mepco, each with a PDF attachment.  One was a "Welcome Letter" identifying AFFORDABLE AUTO SHIELD-AA and Mepco "the company that will process your payments for this contract."  The second was a "CONFIRMATION OF PREAUTHORIZED ACH/CC" identifying Mepco as the "Billing Services for Your Automotive Protection Plan," "AFFORDABLE AUTO SHIELD-AA" for "questions regarding the purchase of this contract" and "SUNPATH LTD's" as the contact for information about "Coverage, claims and repair questions."

28. On July 22, 2022, after becoming aware of a $177.90 debit to her credit card by Mepco on July 21, Plaintiff called 855-203-1424 – the number provided in the July 8, 2022 correspondence from Mepco as the contact for AASLLC.  Plaintiff reached a

generic recording about vehicle protection coverage that repeated for more than six minutes and then another recording said "goodbye" and the call disconnected.

29. On July 27, 2022 Plaintiff sent a message to Affordable Auto Shield from the "Contact Us" form on affordableautoshield.com.[1]   Plaintiff demanded the company cancel the policy and add her Number 304-242-XXXX to Affordable Auto Shield's do not call list.  Plaintiff has never received a response to this message.

30. On July 27, 2022 Plaintiff sent a message to Sunpath from the "Send Us A Message" form on gosunpath.com.[2]   Plaintiff's message demanded the company cancel the service plan, add Plaintiff's Number 304-242-XXXX to Sunpath's do not call list, and send to Plaintiff's email a copy of both AAS LLC's and Sunpath's Do Not Call policy.  Plaintiff has never received a response to this message.

31. On July 28, 2022, the Plaintiff received the following text message to her Number 304-242-XXXX from spoofed Caller ID 270-232-8196:

> *"Hello.  We have been attempting to contact you in regards to the Extended Coverage Plan.  Your account may be placed in an inactive status.  To avoid any interruption of services on this vehicle.  Please contact our team at 1-855-203-1424 to resolve this notice.  Txt STOP to STOP."*

32. The phone number 855-203-1424 in the text message is the same number

---

[1] The phone number 855-203-1424 on the affordableautoshield.com website is the same as the contact number for Affordable Auto Shield on the correspondence Plaintiff received on July 8, 2022 from Mepco.

[2] A website identified by the Braintree Massachusetts BBB associated with Sunpath Ltd.

identified as a contact for Affordable Auto Shield on the policy materials Plaintiff received on June 29, 2022 and is the contact number listed on affordableautoshield.com.

33. On September 8, 2022, Plaintiff received the following text message to her Number 304-242-XXXX from spoofed Caller ID 270-241-1192:

> *"Hello. We have been attempting to contact you in regards to the Extended Coverage Plan. Your account may be placed in an inactive status. To avoid any interruption of services on this vehicle. Please contact our team at 1-855-203-1424 to resolve this notice. Txt STOP to STOP."*

34. The phone number 855-203-1424 in the text message is the same number identified as a contact for Affordable Auto Shield on the policy materials Plaintiff received on June 29, 2022 and is the contact number listed on affordableautoshield.com

35. On September 22, 2022, the Plaintiff received the following text message to her Number 304-242-XXXX from spoofed Caller ID 580-396-2081:

> *"Hello. We have been attempting to contact you in regards to the Extended Coverage Plan. Your account may be placed in an inactive status. To avoid any interruption of services on this vehicle. Please contact our team at 1-855-203-1424 to resolve this notice. Txt STOP to STOP."*

36. The phone number 855-203-1424 in the text message is the same number identified as a contact for Affordable Auto Shield on the policy materials Plaintiff received on June 29, 2022 and is the contact number listed on affordableautoshield.com

37. On October 6, 2022 the Plaintiff received the following text message to her

Number 304-242-XXXX from spoofed Caller ID 270-241-1185:

> *"Hello. We have been attempting to contact you in regards to the Extended Coverage Plan. Your account may be placed in an inactive status. To avoid any interruption of services on this vehicle. Please contact our team at 1-855-203-1424 to resolve this notice. Txt STOP to STOP."*

38. The phone number 855-203-1424 in the text message is the same number identified as a contact for Affordable Auto Shield on the policy materials Plaintiff received on June 29, 2022 and is the contact number listed on affordableautoshield.com

39. On October 10, 2022 the Plaintiff received the following text message on her Number 304-242-XXXX from spoofed Caller ID 270-241-1185:

> *"Hello. We have been attempting to contact you in regards to the Extended Coverage Plan. Your account may be placed in an inactive status. To avoid any interruption of services on this vehicle. Please contact our team at 1-855-203-1424 to resolve this notice. Txt STOP to STOP."*

40. The phone number 855-203-1424 in the text message is the same number identified as a contact for Affordable Auto Shield on the policy materials Plaintiff received on June 29, 2022 and is the contact number listed on affordableautoshield.com

41. On October 20, 2022 the Plaintiff received the following text message on her Number 304-242-XXXX from spoofed Caller ID 270-241-1185:

> *"Hello. We have been attempting to contact you in regards to the Extended Coverage Plan. Your account may be placed in an inactive status. To avoid any interruption of services on this vehicle. Please contact our team at 1-855-203-1424 to resolve this notice. Txt STOP to STOP."*

42. The phone number 855-203-1424 in the text message is the same number

identified as a contact for Affordable Auto Shield on the policy materials Plaintiff received on June 29, 2022 and is the contact number listed on affordableautoshield.com

43. On November 17, 2022 at 9:38 a.m. the Plaintiff received a call to her Number 304-280-XXXX from spoofed Caller ID 304-200-4861. Plaintiff answered this call from "Nathan" with the "warranty division" of "dealer services company" an "authorized vehicle service contractor for all vehicles nationwide." Because the caller used generic names, Plaintiff knew it would not be easy, or potentially impossible, to identify the caller without actually purchasing a service contract.

44. Plaintiff was transferred to agent "Theresa" who said the coverage on Plaintiff's vehicle had expired, that this was a "courtesy call to see if we can get the vehicle back under coverage." Plaintiff provided her credit card number and email address and purchased a vehicle protection plan, solely to identify the caller. While still on the phone with the agent, Plaintiff's credit card was debited in the amount of $299 by AASLLC.

45. At 4:43 pm on November 17, 2022 Plaintiff received a text message to her Number 304-280-XXXX from Caller ID 888-526-4004 with instructions to follow a link to download confirmation of the vehicle protection plan which identified AASLLC, a d/b/a of Pelican.

46. On November 18, 2022, the Plaintiff received a call to her Number 304-XXX-

1607 from spoofed Caller ID 304-200-4960. Plaintiff answered this call and the agent asked her to verify the make and model of her vehicle "so we can update the file". Plaintiff was then transferred to agent Theresa, the same agent Plaintiff spoke to a day earlier about getting the "vehicle back under coverage." Plaintiff made a Do Not Call request, whereupon Theresa immediately hung up.

47. On November 28, 2022 the Plaintiff received a booklet via USPS mail that outlined the terms of the vehicle protection plan Plaintiff purchased during the November 17, 2022 call. The booklet identified "Sunpath Mileage Plus Deluxe," a "Mepco INSTALLMENT AGREEMENT" and the "seller/Dealer/Vendor Name" "AAS".

48. Later that same day, Plaintiff called the number for Sunpath identified in the booklet and told the representative who answered to she wanted to cancel the policy and wanted to have her number added to the do not call list. The agent told Plaintiff she had to call AAS directly to cancel.

49. Plaintiff hung up and called the number identified in the booklet for AAS to cancel the policy. Plaintiff reached a recording and after being on hold for over six minutes, another recording played "goodbye" and the call disconnected.

50. On November 29, 2022 Plaintiff visited the website affordableautoshield.com[3]

---

[3] The phone number 855-203-1424 on the affordableautoshield.com website is the same as the contact number for Affordable Auto Shield on the correspondence Plaintiff received on July 8, 2022 from Mepco.

and using the contact form, sent a message demanding that the company stop calling Plaintiff's Number 304-280-XXXX and send her a copy of the company's written Do Not Call policy.  Plaintiff has never received a response to this message.

51.  On December 3, 2022 Plaintiff again visited gosunpath.com and using the contact form, provided her email address and sent a message again demanding that Sunpath and Affordable Auto Shield stop calling Plaintiff's wireless Number 304-280-XXXX and send a copy of the Do Not Call policy to her email.  Plaintiff has never received a response to this message.

52. On December 17, 2022 Plaintiff's credit card was debited $154.21 by Mepco.

53.  On May 18, 2023 Plaintiff received this text message to her Number 304-XXX-4327 from spoofed Caller ID 717-613-7059:

> *"Hello.  We have been attempting to contact you in regards to the Coverage Plan. Your account may be placed in an inactive status.  To avoid any interruption of services on this coverage.  Please contact our team at 1-855-203-1424 to resolve this n notice.  Txt STOP to STOP".*

54.  The phone number 855-203-1424 in the text message is the same number identified as a contact for Affordable Auto Shield on the policy materials Plaintiff received on June 29, 2022 and is the contact number listed on affordableautoshield.com.

55. Prior to receiving these telephone calls and text messages by or on behalf of Defendants, Plaintiff never provided prior express consent to be called or texted by or on behalf of Defendants.

56.  In all instances, Defendants, acting directly or through one or more

intermediaries "spoofed" their calls by transmitting phony caller identification information so that call recipients do not know the true source of the calls.

57. In numerous instances, Defendants, acting directly or through one or more intermediaries, failed to disclose truthfully, promptly and in a clear and conspicuous manner to the person receiving the call or text (a) the identity of the seller, (b) that the purpose of the call was to sell goods or services, or (c) the nature of the goods or services.

58. Plaintiff was harmed by these calls and text messages. She was temporarily deprived of the legitimate use of her telephone and her privacy was improperly invaded. Moreover, they injured Plaintiff because they were frustrating, annoying, and disturbed the solitude of Plaintiff.

59. In all instances, none of the calls were necessitated by an emergency purpose.

<u>**COUNT I**</u>
**Violations of the TCPA**
**(47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2))**

60. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

61. Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf caused to be made telemarketing calls and text messages to Plaintiff's residential telephones, which were listed on the do-not-call registry, in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2).

62. Despite her numbers being registered on the Do Not Call Registry, Plaintiff

received more than one telephone call within a 12-month period by or on behalf of Defendants in violation of the TCPA.

63. Defendants' violations were negligent, willful, and knowing.

## COUNT II

### Violations of the TCPA

### (47 U.S.C. § 227(c) and 47 C.F.R. § 64.1601(e))

64. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

65. Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, initiated telemarketing calls which failed to transmit the requisite caller identification information and which likewise failed to permit an individual to make a do-not-call request during regular business hours. *See* 47 C.F.R. § 64.1601(e).

66. The Defendants' violations were willful and/or knowing.

## COUNT III

### (47 U.S.C. § 227(c) and 47 CFR § 64.1200(d))

67. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

68. Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, initiated telemarketing calls during a time when they failed to meet the requirement to maintain a written do-not-call policy and to honor requests for the do-not-call policy.

69. The Defendants' violations were willful and/or knowing.

## COUNT IV

### (47 U.S.C. § 227(b)(1)(A)(iii) and 47 CFR § 64.1200(a)(1)(iii))

70. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

71. Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf initiated a prerecorded telemarketing call to plaintiff's wireless phone number in the absence of prior express written consent and/or in the absence of an emergency purpose.

72. The Defendants' violations were willful and/or knowing.

WHEREFORE, Plaintiff demands from Defendants statutory penalties and damages as provided by law in the amount of $1,500 per violation, prejudgment and post judgment interest, costs, attorney's fees, and whatever further relief the Court deems appropriate.

JURY TRIAL DEMANDED.

**DIANA MEY**

/s/    Diana Mey_____
Diana Mey, Pro Se
418 San Pedro Drive
Lady Lake, FL  32195
304-280-1607
diana_mey@comcast.net